IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**Christy Lynn Harlan**                                                                                                **Plaintiff**

**Cause No. 3: 12-CV-095-JTK**

**Carolyn W. Colvin, Acting Commissioner,**                                                       **Defendant**
**Social Security Administration**

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Christy Lynn Harlan seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income. Harlan based disability on multiple sclerosis[1] — "a slowly progressive disease of the central nervous system."[2] Harlan was diagnosed in November 1999 at age 25.[3]

Harlan applied for disability benefits in October 2006 at age 32.[4] She reported that her illness began to affect her legs and forced her to stop working in July 2006.[5] At that time, Harlan was a full-time college student. Initially, Harlan based her onset date on the November 1999 diagnosis, but she later amended her onset date to June 2006 based on her

---

[1]SSA record at p. 221.

[2]Genevieve T. Slomski & Tish Davidson, 4 The Gale Encyclopedia of Med. 2944 (4th ed.).

[3]SSA record at p. 373 (MRI of head showing multiple enhancing abnormal deep white matter signal abnormalities consistent with multiple sclerosis).

[4]*Id*. at pp. 189 & 192.

[5]*Id*. at p. 221. *See also id*. at p. 91.

earnings history.[6]

**The Commissioner's decision**. After considering Harlan's application, the Commissioner's ALJ determined that although Harlan had severe impairments — multiple sclerosis, headaches, and chronic fatigue[7] — Harlan could do sedentary work.[8] The ALJ applied the medical-vocational guidelines and determined Harlan was not disabled under the Social Security Act.[9]

After the Commissioner's Appeals Council denied a request for review,[10] the ALJ's decision became a final decision for judicial review.[11] Harlan filed this case to challenge the decision. In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12]

---

[6]*Id*. at p. 89.

[7]*Id*. at p. 23.

[8]*Id*. at p. 25.

[9]*Id*. at p. 34.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant

**Mental impairment**. Harlan maintains the ALJ erred at step two by determining bipolar disorder and attention deficit disorder were non-severe impairments.[13] Harlan's complaint provides no basis for relief because her case proceeded to step three. Step two directs a conclusion of "non-disabled" if the claimant fails to prove a severe impairment such that the process weeds out claimants whose abilities to work are not significantly limited.[14] If the claimant meets her step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments.

Harlan met her burden to show a severe impairment, so her application proceeded to step three. The ALJ discussed Harlan's mental health counseling records, applied the special technique for evaluating mental impairment, and determined Harlan did not meet the duration requirement.[15] The ALJ's explanation shows the ALJ considered all of the medical evidence. Even if bipolar disorder and attention deficit disorder were severe, no

---

disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13]Docket entry # 11, pp. 12-14.

[14]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (concurring and stating that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

[15]SSA record at pp. 24 & 31-32.

harm flowed from finding they were non-severe at step two because Harlan proceeded to the third step.

**Sedentary work**. Harlan contends the determination that she can do sedentary work is unsupported by substantial evidence.[16] She complains particularly about the ALJ's reliance on her status as a full-time college student. "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[17] For substantial evidence to exist in this case, a reasonable mind must find the evidence adequate to show Harlan could do sedentary work. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[18]

A reasonable mind would accept treatment records as adequate to show Harlan could do sedentary work. Harlan's long-time neurologist — Dr. South — thoroughly documented the progress of Harlan's illness. Harlan initially experienced double vision, fatigue, and dizziness. Harlan did well with medication therapy, but periodically experienced fatigue and body aches. For a while, Harlan lacked medical insurance and could not afford her medication. Her condition deteriorated; she developed weakness in

---

[16]Docket entry # 11, pp. 14-16.

[17]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (internal citation omitted).

[18]20 C.F.R. §§ 404.1567(a), 416.967(a).

her legs, problems with walking, and numbness and tingling in her arms and legs. An August 2008 MRI indicated "extreme" multiple sclerosis.[19]

After obtaining Medicaid coverage, Harlan resumed her medication therapy.[20] She reported doing much better with her medication.[21] Dr. South's treatment notes documented periods of worsening symptoms, followed by periods of better symptoms, but little disease progression.[22] Harlan reported numerous symptoms to the examining

---

[19] SSA record at p. 519.

[20] *Id*. at pp. 63 & 72.

[21] *See, e.g., id*. at p. 486 (medication for fatigue and headaches were very effective); p. 521 (mor energy and less weakness with medication); p. 661 (better with new medication).

[22] *Id*. at p. 505-07 (July 27, 2001, exacerbation free on medication; doing quite well); p. 502-03 (Oct. 22, 2001, doing well on medication); pp. 498-500 (May 24, 2002, report of fatigue and loss of vision for two weeks; medications added for headaches); p. 495-97 (Sept. 23, 2003, doing okay on medication, a few flare-ups since last visit); pp. 492-93 (Mar. 25, 2004, doing great, but having some fatigue, one episode of weakness in left leg); pp. 486-87 (Oct. 12, 2004, exacerbation free on medication, but no medication for two weeks); pp. 483-84 (June 16, 2006 (experiencing vision problems without medication, difficulty paying for medication); pp. 477-79 (June 23, 2006, vision problems resolved with intravenous steroids, condition improved, medication changed); pp. 471-73 (July 26, 2006, reports of eye pain and lack of energy); pp. 468-69 (Sept. 20, 2006, improved with new medication, but she can't afford it); pp. 419-21 (Jan. 2, 2008, increased symptoms without medication, condition deteriorated); pp. 521-23 (Jan. 22, 2009 (doing great on medication); pp. 533-34 (Aug. 11, 2009, worsening symptoms, condition deteriorated); pp. 641-43 (Nov. 19, 2009, condition deteriorated); pp. 636-37 (Feb. 12, 2010, severity waxes and wanes, change medication); pp. 661-62 (May 14, 2010, better with medication change, but still having problems with gait); pp. 649-50 (Aug. 18, 2010, no flare-up since last visit, doing much better); pp. 646-47 (Dec. 8, 2010, no flare-up since last visit, question of depression).

neurologist in January 2010,[23] but Dr. South's treatment notes reflect fewer symptoms. When Dr. South examined Harlan in December 2010, Harlan had not had a flare-up for seven months.[24]

Dr. South addressed Harlan's ability to work in a January 2009 treatment note. He wrote the following:

> She is no longer able to work in retail [because of] an inability to stand for any length of time. She says she cannot work in an occupation that requires any physical demands such as walking a long distance or lifting heavy [sic]. That doesn't surprise me since many MS patients suffer from severe fatigue. Heat can be devastating to MS patients. Therefore, I don't see any way she could work in a hot environment.[25]

The note is consistent with Harlan's testimony. In November 2009, Harlan testified that her primary problem was her inability to walk very far.[26] Because sedentary work involves sitting with only occasional walking and standing, a reasonable mind would accept the treatment notes as adequate to show Harlan could do sedentary work.

---

[23]*Id.* at p. 616 ("A comprehensive multisystem review is significant for: sleep disturbance, feeling run down, blurry vision, blindness, eye pain, sensitivity to light, nausea/vomiting, urinary frequency, bladder control, joint pain, muscle pain, muscle weakness, stiffness, stroke, numbness, paralysis, seizures, migraines, memory loss, depression, anxiety, mental disturbance, paranoia, cold intolerance, heat intolerance, excessive thirst, excessive urination, abnormal bruising.").

[24]*Id.* at p. 649 (reporting in Aug. 2010 that she had no flare-up since May 2010 visit) & p. 646 (reporting in Dec. 2010 that she had no flare-up since Aug. 2010).

[25]*Id.* at p. 522 (observing, "She seems to be doing great.").

[26]*Id.* at p. 71.

A reasonable mind would also accept Harlan's daily activities as adequate to show she could do sedentary work. Throughout the pendency of this case, Harlan was a full-time college student and the mother of two sons. Harlan cared for her sons, drove them to school, attended college full-time, helped her sons with homework, completed her own homework, took her sons on outings, prepared meals, and laundered family clothing and linens.[27] At times, Harlan relied on the college's assistance for transportation between classes and note-taking,[28] but she also wrote poetry and children's stories.[29] The exertional and non-exertional requirements for these tasks meets the requirements for sedentary work, "a significantly restricted range of work."[30]

For example, the full range of work sedentary work requires the ability to stand and walk for a total of two hours, and to sit for about six hours, with a morning break, a lunch period, and an afternoon break.[31] Harlan testified that on a typical day, she drove her sons to school at 8:00 a.m., arrived on campus around 8:30 a.m., and departed campus around

---

[27]*Id*. at pp. 239-46.

[28]*Id*. at pp. 57-58.

[29]*Id*. at p. 61.

[30]SSR 96-9p, *Pol'y Interpretation RulingTitles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[31]*Id*.

7

2:30 p.m. to pickup her sons.[32]  She stated that on some days, she left campus early to attend physical therapy or to observe classroom teaching from 1:00 p.m. to 3:00 p.m.[33] Afterward, Harlan prepared dinner, helped her sons with homework, and completed her own homework.  This schedule necessarily required the ability to stand and walk for a total of two hours, and to sit for six hours.  Accomplishing these tasks was undoubtedly difficult during periods of relapse, but Harlan managed to do them.  Substantial evidence supports the determination that Harlan could do sedentary work.  Under medical-vocational guideline rule 201.28, Harlan was not disabled.

**Conclusion**.  Because multiple sclerosis is a progressive disease, Harlan's condition could deteriorate and further limit her ability to work, but substantial evidence shows she could do sedentary work through the date of the Commissioner's decision.  The ALJ made no error of law.  The court DENIES the request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 31st day of July, 2013.

_____
United States Magistrate Judge

---

[32]SSA record at p. 100.

[33]*Id.*